Michael Jason Lee, Esq. (State Bar No. 206110)
**LAW OFFICES OF MICHAEL JASON LEE, APLC**
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Tel: (858) 550-9984
Fax: (858) 550-9985
Email: michael@mjllaw.com

Timothy P. Dillon, Esq. (SBN 190839)
Sunjina K. Ahuja (SBN 226130)
**DILLON MILLER & AHUJA, LLP**
5872 Owens Avenue, Suite 200
Carlsbad, CA 92008
Telephone:    (858) 587-1800
Facsimile:    (858) 587-2587
Email: tdillon@dmalaw.com
Email: sahuja@dmalaw.com

Attorneys for Plaintiff,
Thomas H. Casey, Trustee of the
Zia Shlaimoun Ch. 7 Bankruptcy Estate

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA / SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>ZIA SHLAIMOUN,<br><br>Debtor.<br><br>THOMAS H. CASEY, Trustee of the<br>Zia Shlaimoun Ch. 7 Bankruptcy Estate<br><br>Plaintiff,<br><br>vs.<br><br>HEYDE MANAGEMENT, LLC, a Missouri limited liability company,<br><br>Defendant. | Bankruptcy No.: 8:17-bk-10976-TA<br>Chapter: 7<br>Adversary No.:<br><br>**CHAPTER 7 TRUSTEE'S COMPLAINT AGAINST HEYDE MANAGEMENT, LLC FOR:**<br><br>1) **Avoidance of a Transfer of Property Pursuant to §547(b)**<br>2) **Avoidance of a Transfer of Property Pursuant to 11 U.S.C. §548**<br>3) **Avoidance of a Transfer of Property Pursuant to 11 U.S.C. §549**<br>4) **Recovery of Avoided Transfer Pursuant to 11 U.S.C. §550** |

BK No.: 8:17-bk-10976-TA

COMPLAINT

Plaintiff Thomas H. Casey, Trustee of the Zia Shlaimoun Ch. 7 Bankruptcy Estate ("Plaintiff"), alleges as follows:

1. Plaintiff is the duly appointed trustee of the estate of Zia Shlaimoun ("Debtor").

2. Pursuant to the requirements as set forth in Rule 7008 of the Federal Rules of Bankruptcy Procedure, Plaintiff Thomas H. Casey states his consent to the entry of a final order or judgment of this Court.

3. The Debtor's bankruptcy petition was filed on March 15, 2017 (the "Petition Date").

4. Defendant, Heyde Management, LLC ("Heyde"), is a Missouri limited liability company. Heyde is an "insider" to Debtor as that term is defined by 11 U.S.C. §101(31).

5. This is an action to recover property transferred pursuant to an avoided preference, as more particularly set forth below. The Court has jurisdiction of this cause pursuant to 28 USCA §1334 and 28 USCA §157(a).

6. This is a core proceeding pursuant to 28 USCA §157(b).

7. Venue in this adversary proceeding is proper in this district pursuant to 28 USCA §1409(a).

## GENERAL ALLEGATIONS

## ALTER EGO ALLEGATIONS AS TO GOLDSTAR LABORATORIES MISSOURI, LLC

8. Goldstar Laboratories Missouri, LLC ("GLM") is a sham entity formed and wholly owned by the debtor, Zia Shlaimoun ("Shlaimoun"). Shlaimoun utilized the corporate coffers of GLM to pay his personal expenses.

9. Shlaimoun funneled a minimum of $50,000 through GLM and utilized GLM's funds to pay for a smatering of personal expenses, including a gym membership, food, entertainment/hobbies, college tuition, legal expenses on matters unrelated to the company, a live-in property (residential) caretaker and other failed "business" endeavors. The majority of GLM's funds were not used for legitimate business purposes.

10. GLM is one of at least 10 different[1] "Goldstar" or "Gold Star" entities (collectively, the "Goldstar Entities"). All of the Goldstar entities, save for one exception, were wholly owned by

---

[1] The 10 different entities of which Plaintiff is aware are: (1) Goldstar Laboratories LLC; (2) Goldstar Laboratories Dayton LLC; (3) Goldstar Laboratories Florida LLC; (4) Goldstar Laboratories Michigan LLC; (5) Goldstar Laboratories Missouri

Shlaimoun. The one entity that was not wholly owned by Shlaimoun – Goldstar Missouri, LLC – was owned 50% by him.

11. Shlaimoun used the corporate funds of the Goldstar Entities as his own personal piggy banks. In total, Shlaimoun funneled well in excess of $1,000,000 through the Goldstar Entities. He used these entities to pay his and his family member's personal day to day expenses. Shlaimoun also used the Goldstar Entities to hold large amounts of cash that he could then, in turn, give to his family members to hold.

12. Shlaimoun funneled his money through the Goldstar Entities (including GLM) as a way of hiding his cash from his creditors and as a means of shielding himself from collection efforts. GLM, and the other Goldstar Entities, were an extension of Shlaimoun.

13. GLM is the alter ego of Shlaimoun. The Trustee is informed and believes and thereon alleges that the recognition of the privilege of separate existence would promote injustice because, Shlaimoun, in bad faith dominated and controlled GLM, and its funds by engaging in the following:

    a. Shlaimoun commingled company funds and used company monies for his own personal expenses;

    b. Shlaimoun transferred funds to GLM, mostly for no legitimate business purposes, but rather, for the purpose of shielding his money from creditors' collection efforts;

    c. Shlaimoun routinely disregarded corporate formalities; and

    d. Shlaimoun utilized GLM as a scam entity to pay his personal expenditures and debts.

14. Because GLM is the alter ego of Shlaimoun and Shlaimoun largely funded the entity with his own assets and paid his own personal expenses with GLM funds, the funds of GLM should be regarded as funds of the Debtor and GLM as a mere extension of Shlaimoun.

---

LLC; (6) Goldstar Laboratories Ohio LLC; (7) Goldstar Laboratories Texas, LLC; (8) Goldstar Missouri LLC, along with two additional entities Shlaimoun failed to disclose in his bankruptcy schedules – (9) Gold Star Group, LLC, and (10) Gold Star Health, LLC.

## BACKGROUND ALLEGATIONS

15. On or about February 17, 2017, GLM made a payment of $11,957 to Defendant, Heyde on an antecedent debt for purported back rent. On or about March 1, 2017, GLM made another payment to Heyde of $2,500 on an antecedent debt. GLM also made another payment in March of 2017 for $7,305.45, also purportedly on an antecedent debt.

16. The three payments described above total $21,762.45 and said payments, along with additional payments made in a currently unknown amount, shall collectively be referred to as the Transfers.

## FIRST CLAIM FOR RELIEF

### (Avoidance of a Transfer of Property Pursuant to §547(b))

17. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

18. Debtor caused the Transfers to be issued from a GLM account that he fully controlled and had ownership of.

19. The Transfers were made to or for the benefit of Heyde, who was a creditor of Debtor, for an amount not less than the amount of the Transfers at the time of the Transfers. Heyde's claim against Debtor for which the Transfer was made was an antecedent debt.

20. The Transfers were made at a time that Debtor was insolvent as his debts exceeded the value of all of his assets and/or Debtor was unable to pay his debts as they came due. Accordingly, the Transfer was made while Debtor was insolvent, as that term is defined in 11 USCA §101(32).

21. The Transfers were made on or within 90 days before the Petition Date.

22. The Transfers were enabled Heyde to receive more than it would have received if the Transfer had not been made and Heyde received payment of its debt to the extent provided by the Bankruptcy Code §547(b).

23. The Transfer is thus voidable pursuant to Bankruptcy Code §547(b).

///

///

///

## SECOND CLAIM FOR RELIEF

**(Avoidance of a Transfer of Property Pursuant to 11 U.S.C. §548)**

24. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

25. To the extent Heyde alleges it was not a creditor of Debtor or that the Transfers were not made on account of an antecedent debt, Debtor did not receive reasonably equivalent value in exchange for the Transfer.

26. The Transfer was made with actual intent to hinder, delay and/or defraud a creditor.

27. The Transfer is avoidable pursuant to Bankruptcy Code §548.

## THIRD CLAIM FOR RELIEF

**(Avoidance of a Transfer of Property Pursuant to 11 U.S.C. §549)**

28. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

29. To the extent Heyde alleges it was not a creditor of Debtor, that the Transfers were not made on account of an antecedent debt or that the Transfers (in whole or in part) were made post-petition, Debtor did not receive reasonably equivalent value in exchange for the Transfer.

30. The Transfer was made with actual intent to hinder, delay and/or defraud a creditor.

31. The Transfer is avoidable pursuant to Bankruptcy Code §549.

## FOURTH CLAIM FOR RELIEF

**(Recovery of Avoided Transfer Pursuant to 11 U.S.C. §550)**

32. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

33. The Transfer was paid via Debtor's shell entity, GLM and Heyde was a subsequent transferee pursuant to 11 U.S.C. §550(a).

34. Upon avoidance of the Transfer, Plaintiff may recover the Transfer amount, or the value thereof, from Transferee, pursuant to Bankruptcy Code §550(a).

///

///

## RESERVATION OF RIGHTS

35. Plaintiff hereby specifically reserves the right to bring any and all other causes of action that it may maintain against Transferee including, without limitation, causes of action arising out of the same transaction(s) set forth herein, to the extent discovery in this action or further investigation by Trustee reveals such further causes of actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment as follows:

1. Avoidance and recover of the Transfer;
2. An award of costs and disbursements incurred by Plaintiff in this action; and
3. An award of such other relief as may be just and proper.

Dated: March 14, 2019     **LAW OFFICES OF MICHAEL JASON LEE, APLC**

By: */s/ Michael Jason Lee, Esq.*
Michael Jason Lee, Esq.
*Attorney for Plaintiff,*
*Thomas H. Casey, Trustee of the*
*Zia Shlaimoun Ch. 7 Bankruptcy Estate*